UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUSTIN SATHUE,

        Plaintiff,      Case # 18-CV-548-FPG

v.                DECISION AND ORDER

MIR VEST INC. & MIN ZHANG,

        Defendant.

## INTRODUCTION

On May 14, 2018, *pro se* Plaintiff Justin Sathue filed a Complaint against Defendants Mir Vest Incorporated and Min Zhang (Mir Vest's Chief Executive Officer) and an *in forma pauperis* motion. ECF Nos. 1, 2. On June 19, 2018, Plaintiff filed an Amended Complaint. ECF No. 3.

On November 13, 2018, the Court granted Plaintiff's *in forma pauperis* motion and dismissed his Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. ECF No. 4. The Court indicated that Plaintiff could file a second amended complaint by December 10, 2018. *Id.*

On that date, Plaintiff filed a Second Amended Complaint that the Court screened under the 28 U.S.C. § 1915(e) criteria. For the reasons that follow, Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE.

## DISCUSSION

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). A court must dismiss a complaint in a civil action if it

determines at any time that the action (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A court must liberally construe *pro se* pleadings, but such pleadings must still meet the notice requirements of Federal Rule of Civil Procedure 8. *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation and quotation marks omitted).

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

## II. Subject Matter Jurisdiction

The Court dismissed Plaintiff's Amended Complaint for lack of subject matter jurisdiction. ECF No. 4. Plaintiff's Second Amended Complaint properly alleges diversity jurisdiction, which requires diversity of citizenship and an amount in controversy greater than $75,000. 28 U.S.C. § 1332. Plaintiff alleges that he resides in New York, that Defendant Mir Vest, Inc. is incorporated in California,[1] and that Defendant Min Zhang resides in California, and over $75,000 in damages. ECF No. 7 at 1, 15.

---

[1] A corporation's citizenship derives from every State in which it has been incorporated and from the State where it has its principal place of business. 28 U.S.C. § 1332; *see, e.g.*, *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

2

### III. Plaintiff's Second Amended Complaint

In the spring of 2017, Plaintiff purchased a weighted running vest from Mir Vest. *Id.* at 2. As advertised, the vest was intended to "assist in improving [one's] health." *Id.* Plaintiff regularly wore the vest "in the manner it was intended by the seller as advertised . . . while working towards health goals." *Id.* at 8.

On July 14, 2017 around 1:00 p.m., Plaintiff was wearing the vest with bathing suit bottoms and carrying his cell phone, cigarettes, a debit card, his New York State identification card, and headphones. *Id.* Plaintiff was walking down Niagara Falls Boulevard in Niagara Falls, New York when he was allegedly "stopped, at gunpoint, by Niagara Falls Law enforcement and subsequently detained, questioned, and interrogated" because someone called 911 and said Plaintiff was carrying explosives. *Id.* Plaintiff asserts that more than five law enforcement vehicles from at least two different agencies responded to this incident when he "was doing absolutely nothing wrong and acting lawfully at all times." ECF No. 7 at 8. Apparently, the 911 caller construed the vest as a "terrorist weapon" or "suicide bomber jacket." *Id.* at 9. Law enforcement also told Plaintiff that someone called 911 and said he had a gun. *Id.*

Twenty minutes later, Plaintiff was released from custody and was not charged with any crimes. *Id.* Plaintiff does not allege that the officers used force against him or otherwise violated his constitutional rights during this interaction. Plaintiff asserts that in July 2017, presumably after the incident on Niagara Falls Boulevard, he would "be at home minding [his] own business" and would notice a police car parked outside. *Id.* This made him feel "paranoi[d], nervous, and like [he] did something wrong." *Id.* at 9.

Plaintiff asserts that all of this happened after he "reported an incident to Governor Cuomo" in April of 2017 that occurred at a Panera Bread. ECF No. 7 at 10. Apparently, the Niagara Falls

Police Department responded to a dispute between Plaintiff and another Panera Bread customer. *Id.* Plaintiff alleges that law enforcement was "aggressively authoritative" and "started to treat [him] differently" when they realized he had a "foreign address" on his New York State identification card. *Id.* Plaintiff does not sue any law enforcement officers in this case.

Plaintiff styles his claims against Defendants as ones for "strict product liability – failure to warn," "strict product liability – misrepresentation," and "false advertising." *Id.* at 12-15. Plaintiff asserts that Defendants "failed to adequately warn" him of the dangers of the vest, that the vest lacked any "cautionary statements" or "warning labels," and that the vest was "unsafe and defective" when he purchased it. *Id.* at 12. Plaintiff contends that Defendants were aware of the dangers of the vest and failed to warn Plaintiff that it could be "construed as explosives." ECF No. 7 at 13-14. He also asserts that Defendants "falsely advertised" the vest as safe in violation of California Business and Professions Code § 17500 and New York General Business Law § 350. ECF No. 7 at 13-15.

Plaintiff seeks a judgment declaring the vest defective; an injunction preventing Defendants from selling the vest or any other product "until they contain proper warnings"; $20,000 for "each and every time Defendants falsely advertised the vest to [him]"; reimbursement for three times the amount of his cell phone ($299.99), which cracked because he threw it when law enforcement approached; reimbursement for the cost of the vest ($59.99) and eviction costs ($1,300.00); and $1.5 million in punitive damages. *Id.* at 15.

IV.     **Strict Products Liability**

"A cause of action in strict products liability lies where a manufacturer places on the market a product which has *a defect* that causes injury." *Tuosto v. Philip Morris USA Inc.*, No. 05CIV.9384(PKL), 2007 WL 2398507, at *10 (S.D.N.Y. Aug. 21, 2007) (quoting *Kosmynka v.*

*Polaris Indus. Inc.*, 462 F.3d 74, 86 (2d Cir. 2006)) (emphasis in original). Plaintiff alleges that Defendants are liable to him under two theories of strict liability—failure to warn and misrepresentation.

### A.     Failure to Warn

"To state a claim for failure to warn, a plaintiff must show that a warning is necessary to make a product reasonably safe, suitable and fit for its intended use, that [defendants] failed to provide such a warning, and that such failure was the proximate cause of plaintiff's injury." *Tuosto*, 2007 WL 2398507, at *11 (citation, quotation marks, and alterations omitted). "There is no difference between the prima facie elements of a failure to warn claim sounding in negligence and one sounding in strict products liability." *Mustafa v. Halkin Tool, Ltd.*, No. 00-CV-4851 (DGT), 2007 WL 959704, at *17 (E.D.N.Y. Mar. 29, 2007) (citations omitted).

Even if Plaintiff could establish the first two elements, his claim fails because he has not demonstrated that Defendants' alleged failure to warn was the proximate cause of his injuries. *See, e.g.*, *Mustafa*, 2007 WL 959704, at *17 ("[A] court may dismiss a failure to warn claim as a matter of law if . . . plaintiff cannot prove that the absence of warning proximately caused his injury.") (citations omitted). Plaintiff alleges that, because Defendants did not warn him about the dangers of the vest, he was perceived as a terrorist and was stopped and questioned by law enforcement, who then "harassed" him "on an ongoing basis for over six months." ECF No. 7 at 12.

Plaintiff's injury is far too removed from Defendants' conduct to demonstrate proximate cause. "Where a superseding act is not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it breaks the causal nexus." *Dickinson v. Dowbrands Inc.*, 261 A.D.2d 703, 703 (3d Dep't 1999) (citations omitted). Here, there were multiple, unforeseeable, superseding acts—an individual observing Plaintiff and believing he was

5

dangerous, that individual calling 911, law enforcement stopping and questioning Plaintiff, Plaintiff throwing and breaking his phone, and law enforcement later "harassing" Plaintiff or acting in a way that made him paranoid. These acts are "so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them thereby severing any alleged negligence or strict products liability." *Id.* (quotation mark and citation omitted).

Accordingly, Plaintiff's strict liability failure to warn claim is dismissed with prejudice. The Court finds that any amendment would be futile in light of the circumstances discussed above.

### B.  Misrepresentation

The Restatement (Second) of Torts § 402B provides the following regarding strict liability misrepresentation:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> (a)   it is not made fraudulently or negligently, and
>
> (b)   the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402B (1965). However, "New York has never adopted the strict liability approach set forth in Section 402B of the Restatement." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 623 (S.D.N.Y. 2012) (citations omitted). Accordingly, Plaintiff's strict liability misrepresentation claim is dismissed with prejudice for failure to state a claim upon which relief may be granted. Any amendment would be futile because Plaintiff cannot state a claim under this theory.

## V.    False Advertising under New York and California Law

"To state a claim for false advertising or deceptive business practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quotation mark and citations omitted) (referring to N.Y. Gen. Bus. Law § 350 and Cal. Bus. & Prof. Code § 17500). "Plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 182 (E.D.N.Y. 2018) (discussing N.Y. Gen. Bus. Law § 350) (citing *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order)) (alterations and quotation marks omitted); *see also Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871-72 (E.D.N.Y. 2018) (applying same standard to claims under Cal. Bus. & Prof. Code § 17500).

Plaintiff alleges only that Defendants "falsely advertised" the vest to be "safe," to have "no risk," and to "assist in improving [one's] health." ECF No. 7 at 2, 14. It is unclear whether Defendants actually used any of this language, but, in any event, Plaintiff does not indicate how this language is deceptive or misleading or allege that it was likely to mislead a reasonable consumer. Accordingly, this claim must be dismissed with prejudice because amendment would be futile. Plaintiff cannot plausibly allege that the statements at issue would mislead a significant portion of the public to believe that if they purchased and wore the vest they would not be perceived as a suicide bomber or terrorist and be questioned by the police.

**CONCLUSION**

Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE and the Clerk of Court will close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit on motion in accordance with Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: April 15, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court